Our next case this morning is Peck v. McCann and Barnes, case number 21-1125 and case number 21-1127. I understand, Ms. Miata, you're going first, is that correct? That's correct, your honor. You may proceed. Thank you. Good morning. My name is Bianca Miata, and I am here today on behalf of Executive Director Michelle Barnes for the Colorado Department of Human Services. With me is Ms. Kendra Smith, who is counsel for District Attorney Beth McCann. Quickly to the division of time, I will start my argument by addressing constitutionality. The department will rest on its briefing on the threshold issue of standing. At approximately the 10-minute mark, I will hand things over to Ms. Smith, who will touch on standing as well as District Attorney McCann's additional arguments. Hello, counsel. Could I just ask you a threshold question? Because you raised it in your brief, and it wasn't raised in the McCann brief, and that has to do with rightness. If we decide that Ms. Peck has suffered a standing injury based on chilling effect, how could this case not be right? Your honor, the department's position is that standing and rightness are two sides of the same coin. It would be difficult to find that Ms. Peck has standing, but that the case is not right. Are you making a prudential rightness argument in addition to an Article 3 argument? No, we are not, your honor. Thank you. Thank you. I have a question about whether we should really treat this as a challenge to the criminal penalty section, or whether we should treat it as a challenge to the substantive provisions. It's been framed to us as if it's only a criminal penalty provision, and you're not really challenging the content of the substantive content. It seems to me, in truth, this is really a challenge to the substantive stuff, so that a ruling would have a perhaps broader ramification than you're saying. I just found that very odd. I'd like your comment. Certainly. Your honor, I believe the department shares that position that the district court's ruling, as well as Ms. Peck's brief, in truth challenge the substance and the While the relief requested by Ms. Peck was that the criminal penalty is beheld unconstitutional, and while that is the relief that was ordered by Judge Jackson in the district court, a close read of the district court's order certainly calls into question the ongoing constitutionality and validity of the restriction on speech set forth in 19-1-307-1A. It seems we couldn't grant the relief unless we first held that the substantive provision was in unconstitutional. Your honor, the department agrees that those two issues are inextricably intertwined. Thank you. Thank you. Turning back to the standard that this court will have to apply when reviewing section 19-1-307, the department must demonstrate that this law should be upheld because it satisfies strict scrutiny, and I'd like to take a step back for a moment to talk about Ms. Peck's own disclosure that gave rise to this case, because it really shows why a narrower construction distinguishing seemingly non-identifying information would not be adequate to meet the state's undisputed compelling interests here. Ms. Peck gave an interview to Westward regarding a client's child welfare case, and it's undisputed that she provided no names. However, she did identify her client by relationship as the ex-wife of a named murder defendant and the mother of his child. She also provided the day, time, and place of the next hearing to be held in the child welfare case. She provided a section of an email for publication from a county caseworker explaining the county's underlying child welfare concerns. It is these types of details about children and families that Ms. Peck urges the court to allow to be shared with the public, even though any member of the public, and certainly any individual who is familiar with the family, could have department argues the scope of the prohibition in section 19-1307 cannot be further narrowed and still do its job. Well, counsel, could I just ask you, I mean, I'm taking you that argument to be that what was actually disclosed in this case shows that there can't be any narrower tailoring of this statute. Is that your argument? That's correct, your honor. Okay, so here's where I'm having some difficulty, and it has to do with the child protection teams, which can disclose non-identifying information as part of their work. How do they determine what is non-identifying information, and if they can, doesn't that show that the statute isn't narrowly tailored? That's a great question. Section 19-3308 that speaks, and I believe it's subsection 6, that speaks to the child protection teams, allows for the team to provide public non-identifying information regarding an agency's response to a report of child abuse and neglect, which can be distinguished from providing certain identifying details about a particular child abuse neglect case. One example of this might be if a county receives a report of child abuse and neglect and then fails to respond within the regulatory required timeline of five days, the team could easily report that in response to a child abuse report, the team failed to respond timely within five days while disclosing no details whatsoever regarding a child abuse case. The other thing that I would note about the child protection teams is that those teams are both from government agencies as well as from the community, and when they assess what details can be released, they follow the statute and focus on the actual agency actions as opposed to individual facts of each case, and they are able to do so while weighing any potential irrevocable harm that would be caused by the disclosure of information about a child or their family. Well, isn't isn't Ms. Peck asking to be able to disclose what the child protection teams are able to disclose? Your honor, that's not my understanding of her assertion. My understanding of her argument is that she wishes to disclose details regarding the cases she works on because she believes that those will give credibility to her statements regarding wrongdoing that may or may not be And her argument, to expand on that, I believe her argument is that she must be able to provide case-specific details in order to lend those claims credibility. What if our ruling, if it were hypothetically against you, were to say that we're going to narrow Judge Brooks' ruling and we're going to allow an individual to make only the same kinds of disclosures that the child the responses by the agency, not the complaint at all? If we were to do that, would you have any problems with that? Your honor, I think that that might pose a different question. However, I would still note that even for the child protection teams to winnow out what information speaks specifically to agency response without implicating any facts of an individual child abuse case, that requires expertise. And I'm not certain that there would be sufficient protection for children and families across the state of Colorado were that distinction to be left to individuals with varying degrees of training, if any at all. Okay. So, counsel, my understanding is that Tennessee, I mean, most of the states have these statutes, but Tennessee prohibits only identifying information. Doesn't that show that the Colorado statute could be more narrowly tailored? Your honor, I don't think so. Each state is free to set its own compelling interest and to determine its own values for its community, weighing the different individual mechanisms it may have. And, you know, while I certainly can't speak to the underlying motivations of the Tennessee legislature, just because one state out of 50 does it a different way and does it in the manner that Ms. Peck would allege, doesn't compel a finding that this particular statute is unconstitutional and could be further narrowed. But it might address the terrible parade of horribles that she raises, I mean, that you, that is raised, that Tennessee hasn't gotten cut off from its funding by the federal government because of that. Not to my understanding, your honor, but I have to be honest, the process that the administration for children and families engages in, in determining whether to approve a state plan annually and what additional mechanisms Tennessee may have in place in conjunction with its own statute, that's kind of a black box for us at the moment. I can't speak to why the federal agency would have deemed that sufficient. I was a little confused by references by the magistrate judge in the juvenile court to, and I'm looking at a quote, Ms. Peck's disclosure of identifying information. It also said any identifying information pertaining to this dependency and neglect proceeding shall be kept confidential. But Ms. Peck isn't claiming a right to disclose identifying information, is she? She's not, your honor. And first I'll note, I want to be mindful of my co-counsel's time, so I'm going to speak briefly and answer this question, and then I'll turn over the virtual mic unless you have further questions for me. I think that going through the types of disclosures that Ms. Peck made, using her best judgment as a trained attorney that she deems to be non-identifying, a district court magistrate viewed those very disclosures to be identifying. And I think that's because you can take that information, even though there are no names and she didn't provide the specific address for her client, that information can be taken to easily identify anybody who was named in that story. And that's in a larger urban metropolis like Denver. When you think about counties like San Juan or Mineral County, where you have less than a thousand citizens, the risk of re-identification through seemingly non-identifying details is even more so. Is that your position too, that the email was sent to Ms. Peck? I think I would need more information. I think that the details provided in the email, as well as the timing of the email, giving reference to the client's engagement, as well as the child's presence at the scene of an alleged murder, I do think that those details could have been identifying. If the court has no further questions, I would like to request that the court hold the statute is narrowly tailored to meet the state's compelling interests. And I would like to hand the time over to my co-counsel, Ms. Smith. Thank you, Ms. Miyata. May it please the court. My name is Kendra Smith and I represent appellant district attorney, Beth McCann. Ms. McCann would like to focus this court's attention on the issue of standing. The district court committed reversible error in finding Ms. Peck has standing. The crux of the issue is whether Ms. Peck's speech is opposed to a subjective chill. And the critical inquiry there that defines an objective chill is the existence of continuing present adverse effects. Here, there are none. Ms. Peck has never been prosecuted or threatened with prosecution under the statute. She's never been investigated in relation to this statute and she's never even been contacted by law enforcement. Instead, she suffered a single past adverse effect in the form of the magistrate judge's order cautioning her that identifying information must be kept confidential per section 307. Will you take a position on whether the email, in fact, is in violation of the statute? And if it is in violation of statute, then she certainly risked prosecution though. Yes, yes, your honor. District attorney McCann takes the position that what Ms. Peck disclosed to Denver Westward was in violation of section 307. We take the position that she disclosed identifying information based on the fact that the newspaper published the names of the parties involved in the child abuse and neglect proceedings. We do, however, take the position that the magistrate court's order was not a continuing adverse effect and that's because the order did not say that any further violations of section 307 would be referred for investigation or prosecution and the order did not say that Ms. Peck would be subject to any sort of disciplinary review or action. It was a single isolated past adverse effect which is... Counsel, counsel, what I'm hearing you is questioning whether the magistrate's warning chilled Ms. Peck's speech. What if this panel were to warn all of you not to engage in certain speech? Would that be a chilling effect? Yes, your honor. It would definitely have a subjective chill. All of us would fear the if cautioned by any court. However, the distinguishing factor is that the judge did not indicate that Ms. Peck would be referred for any sort of prosecution investigation or disciplinary review. There was simply no concrete harm or continuing present adverse effects associated with that order. Well, but don't the cases... aren't the cases rather generous as far as standing injury is concerned relative to chilled speech? Your honor, in the cases where an objective chill has been found, the plaintiffs in those cases established a present desire to speak. Here, Ms. Peck has not articulated a present desire to speak. Her declaration acknowledges that she has no information that she would share at this time and what she does say is that she would potentially disclose non-identifying information exposing official misconduct. But District Attorney McCann does not have any policies specifying that that actually violates section 307. And we recognize that that position might be construed as contradictory to the department's position on statutory construction, but we would ask the court to be notified that the standing burden is non-statutory construction and Ms. Peck bears the burden of establishing an objective chill. I recognize that I'm going over time, so if there are no further questions, I will rest. And we ask that the district court order be reversed. Well, can I just ask very briefly, is it the DA's position that it won't prosecute any sort of releases of information beyond names and addresses? Your Honor, that's a very good question. It is not the DA's position that it will not prosecute. The DA has not issued a disavowal of prosecution in this matter and we recognize that a disavowal of prosecution is capable of ending the standing inquiry. However, here there are other key facts that end the standing inquiry. Those cited previously that Ms. Peck has not been prosecuted, threatened with prosecution, investigated, or contacted by law enforcement. And the reason that a lack of disavowal is not determinative of standing is because the district attorney is an elected official and she's one of many district attorneys in the state. And even a disavowal from her office is not necessarily going to be permanent or all-encompassing. Any further questions from the panel? If not, I will rest as we are over time. Thank you. Mr. Kelly, you may proceed. Thank you, Your Honor, and may it please the court. I'll address standing first since that's in its very rigour, I think, to deal with standing first. The defendants contest only two elements of standing as this court has articulated its parameters. The first is the plaintiff's present desire for no specific plans to engage in a category of expression prohibited by the statute. Second, there is a plausible claim by the plaintiff of no present intent to engage in that type of speech due to credible fear of prosecution. Ms. Peck, when you consider the full factual picture, is well within the elements of the factual envelope for these elements as described by this court, particularly in Initiatives v. Walker and Active v. Castle Rock. Let me just interrupt you to ask to make sure I have this right. Ms. Peck is acknowledging that she cannot release information that is identifying. Is that correct, that the First Amendment doesn't help her there? Yes. Right. What non-identifying information is she wanting to produce that she is concerned she'll be prosecuted for? She wants to call out official lapses, official impropriety, and inadequacy of official responses to investigations of child abuse, just as the Child Protection Team does. And you're assuming there that that information is not identifying? Yes, I am. Isn't that a case-by-case decision? And if we go along with what you're asking for, are we not just giving you, or Ms. Peck or anyone else, a blank check to be releasing all sorts of information that impedes the work that child abuse investigations are meant to do? That's my concern. It would only be the same blank check that has issued the Child Protection Teams. Those teams are required to review the reports and so forth, records that we are talking about, and informed by that review, discuss the adequacy of the agency response. It is impossible to do that without giving some indication of what the agency was doing. The state has taken this language and admits that it's clear and understandable and indicates any information that might identify the subject. The Child Protection Teams consists of ordinary citizens. Each is able to decide for themselves how that applies. In 45 years, there's no evidence of any problems doing that. But aren't they imbued with a state obligation? I mean, they're really acting in an official capacity and they're acting collectively. As a panel member of the court, I know that collectivity is an important leavening and rational breaking experience. I'm not sure that it's the same to say, well, the Child Protection Agency can make decisions of what's disclosing. I ought to be able to make the same decisions as an advocate for a private party. Well, the mindset would be, I also need to follow the law. One with reasonable intelligence is able to understand and follow the law, as is Mrs. Peck or anyone else who is faced with criminal prosecution for disclosing anything likely to identify a child or a family. But she wants to get the criminal possibility thrown out and that would take all that cautionary influence away from her. He wants to get the criminal provisions and the substantive basis for them thrown out, but only to the extent that they forbid disclosure of identifying information. Unfortunately, the trial judge was not in a position to rewrite the statute. Counsel, did you just mean to say non-identifying information? I can't remember the context of what I meant to say. She challenged them only insofar as they forbid disclosure of non-identifying information. Let me just jump in here and get my question out of the way, and maybe you can answer it, which is, do you have a position on whether Ms. Peck's email violated the statute as releasing identifying information? I do. Can we ask the follow-up question? What is your opinion? Sure. That interview is discussed in the party stipulation, which recites that the only thing Ms. Peck disclosed was the excerpt from the email and the date and time of a hearing, hearings that are presumptively open to the public. Her affidavit or declaration and the article show that other information was disclosed, but also that this reporter had access to all kinds of other information about the case. The child's age was mentioned. Actually, the age of the child that was mentioned was not even this child. But he followed the criminal case and had information from that case. It's apparent from the article. He had the booking photo from the DA's file. He had an affidavit that detailed the facts of the case, including the identities of the families. He even had a public GoFundMe site by the father's sister asking for funds for the defense that also identified the family and other details. So, what this record shows is that the only thing disclosed by Ms. Peck was the excerpt from the email, and her position is that is not identifying. And at the very least, were Ms. Peck to be charged under the current statute, she might make that argument, but it would be probably disallowed because the statute doesn't permit that defense. Any information in one of these reports, if disclosed, gives rise to criminal liability under both statutes. Let me ask this way. What is your position on whether the state has a compelling interest in having people provide non-identifying information about child abuse and neglect to child welfare officials? The state's interest in providing only non-identifying information to state officials? I don't think it has any special interest attaching to that. The state would like to have that. Doesn't the state want to provide the public incentive to provide information to child welfare officials, whether it's identifying information or non-identifying information? It certainly does. Is it a compelling interest? It is a compelling interest. Well, if it is, then why isn't the statute sufficiently tailored to match that compelling interest? Because non-compelling information poses no harm to the state's compelling interest. That isn't how I framed it. The question is whether the state has a compelling interest in having people come forward and provide information, whether it's identifying or non-identifying, about child abuse. I think you said yes, but that's exactly what the statute protects. The reason the statute protects it is to encourage people to be candid and to come forward. If the statute does not keep confidential or does not punish disclosure of non-identifying information, that is not going to keep people from coming forward. The coming forward principle is limited in any event because most of the people the family or child cares about have access to it, including all family members and would-be perpetrators. But if it's known that non-identifying information will remain confidential, there is no harm to the state's compelling interest. This notion of non-identifying information is so slippery to me, and maybe it breaks into two non-identifying information that bears on the state's quote-unquote generalized interest in investigating cases of alleged child abuse, which comes from Pennsylvania v. Ritchie U.S. Supreme Court. If you have that kind of non-identifying information, surely the statute allows a criminal penalty for revealing that. Do you agree with that or no? Could you please repeat the first part of the sentence? Sure, that you can have non-identifying information that bears on the state's ability to investigate and to prosecute and pursue and not have its witnesses intimidated and so forth in child abuse cases. And so that kind of non-identifying information should fall within, outside the First Amendment's protection, and be allowed to be prosecuted criminally. Seems to me that I'm asking you. Well, I disagree because that kind of information can be disclosed without deterring disclosure of the information by sources and poses no harm to the children and family involved. So, you limit non-identifying information that can be produced. Well, actually, you just say there isn't any. It's got to be naming the victim, the parents, the addresses, period. Well, non-identifying information can be produced, but it can't be subject to either family members or informants. Why do we say that? The only reason we get started down that path is that's what the Colorado statute says. It talks about identifying information. But the bigger picture and the First Amendment concern, as well as the need to prosecute child abuse cases, it's not talking about identifying information. If you read Pennsylvania v. Ritchie, it's talking about the state's generalized interest in investigating cases of alleged child abuse. Much broader. But that was not a First Amendment case. And certainly, just because there's a compelling interest in obtaining some non-identifying information doesn't mean that its disclosure is going to harm that interest. Mr. Kelly, I haven't seen where Ms. Peck has alleged that she has information in hand covered by the statute that she wishes to disclose. In other words, she doesn't have a report from which she would extract information and disclose it. So I've heard your ripeness argument, but how is this case ripe? How would she suffer hardship from dismissal of this case for lack of ripeness when she doesn't have anything in hand that she wants to disclose at this point? Well, first of all, she's made it clear that she's done this in the past and she would like to do it in the future and feels it's her right and duty to do so. And to require that she have a specific plan of what she wants to say simply goes contrary to both Walker and Apted, where the problems for us is the report that was subject to the Westworld article. Was that underlying report put in the record of this case? No. See, we don't have a report to look at, which seems like it might be useful for us in evaluating these arguments. You do have, well, what we're talking about is disclosure of an excerpt from email by the social worker to the client. Virtually everything else is likely to be in reports, but was also known to the reporter. When you're chilled from exercising a right of free speech and you've resolved to abide by the rule of law, you don't stay up at night making plans on things you would like to say. Let me just ask you one other. As I understand it, you're attempting a facial challenge to the statute. Is that correct? Well, we attempted both. The reason for a facial challenge would be anticipating an argument that she violated the law, even under the manner in which she concedes it's constitutional. Okay, let me just put the final point on it. Have you made a facial challenge to the statute? As it was submitted, no. It was an as-applied challenge. So, what you're looking for by way of relief is a ruling that the statute's unconstitutional as applied to the Westworld situation. Is that correct? As applied to the Westworld situation and situations like it in which disclosures are made of non-identifying information. That's how the as-applied challenge was addressed in both active and initiatives versus Walker. Well, we are over time. Are there any further questions for Mr. Kelly? No. All right. Well, we appreciate the arguments this morning from all counsel. The case will be submitted and counsel are excused. Thank you. Thank you very much.